William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

| | | |
|---|---|---|
| LOUISE REID, | : | ECF |
| Individually and on Behalf of All Other | : | 23 Civ. _____ |
| Persons Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT AND** |
| -against- | : | **JURY DEMAND** |
| | : | |
| A-PLUS CARE HHC INC., SOFIA BAKALINSKY, | : | |
| FREDERICK BAKALINSKY, SPIROS BOTOS, and | : | |
| JOHN DOES #1-10, | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------------X

Plaintiff LOUISE REID ("Plaintiff"), on behalf of herself individually and as class

representative of other employees similarly situated, by and through her attorney, complains and

alleges for her complaint against, A-PLUS CARE HHC INC., SOFIA BAKALINSKY,

FREDERICK BAKALINSKY, SPIROS BOTOS and JOHN DOES #1-10 (together "Defendant"

or "Defendants") as follows:

## NATURE OF THE ACTION

1.      Plaintiff LOUISE REID and similar employees were home health aides who

worked numerous 24-hour shifts for which they were illegally paid for only 13 of the 24 hours

worked, as they did not get 3 one hour meal breaks during each shift and did not get 8 hours of

aggregate sleep during each shift and/or 5 hours of uninterrupted sleep.

2.      Accordingly, Defendants' deduction of 3 hours for breaks and 8 hours for sleep

from health aide's hours worked during each 24-hour shift was unjustified and illegal.

3.     Plaintiff and similar employees were not paid minimum wages for all hours worked.

4.     Plaintiff and similar employees worked for Defendants for more than 40 hours per week ("overtime hours") and were not paid time and one half their regular hourly rate for their overtime hours.

5.     Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for hours worked for which they were not paid and overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

2.     Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages including wages as required under the Wage Parity Act, (b) overtime hours worked for which they did not receive time and one half the minimum wage or time and one half their actual wages, and (c) spread of hours work performed for which they did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq*. and the supporting New York State Department of Labor regulations and are also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to Plaintiff.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

4.     Venue is proper in this district pursuant to 28 U.S.C. §1391.

5.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

6.     Plaintiff LOUISE REID was, at all relevant times, an adult individual, residing in Kings County in New York State.

7.     Upon information and belief, Defendant A-PLUS CARE HHC INC. ("Corporate Defendant") is a New York corporation, with its principal place of business at 1757 Broadway, Brooklyn, N.Y. 11207.

8.     Upon information and belief, Defendant SOFIA BAKALINSKY is and has been for the last 6 years the Chief Executive Officer of Defendant A-PLUS CARE HHC INC., and owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last 6 years, and has been one of the ten largest owners of the Corporate Defendant during the time period that the Plaintiff worked for the Defendant.

9.     Upon information and belief, Defendant FREDERICK BAKALINSKY is and has been for the last 6 years the Chief Executive Officer of Defendant A-PLUS CARE HHC INC., and owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last 6 years, and has been one of the ten largest owners of the Corporate Defendant during the time period that the Plaintiff worked for the Defendant.

10.     On February 10, 2023, Plaintiff Reid by her attorney mailed a notice of personal liability ("Liability Notice") to SOFIA BAKALINSKY and to FREDERICK BAKALINSKY

pursuant to the provisions of Section 630 and 624 of the New York Business Corp. Law
("Liability Notice") on behalf of herself and other similar employees at the address: A-PLUS
CARE HHC INC. 1757 Broadway, Brooklyn, N.Y. 11207.

11.     Defendants SOFIA BAKALINSKY and FREDERICK BAKALINSKY each
received on or before February 28, 2022 the Liability Notices mailed to each of them.

12.     Upon information and belief, Defendant SPIROS BOTOS is and has been for the
last 6 years the Director of Operations of Defendant A-PLUS CARE HHC INC.

13.     Defendants SOFIA BAKALINSKY, FREDERICK BAKALINSKY, SPIROS
BOTOS and JOHN DOES #1-10 (the "Individual Defendants") participated in the day-to-day
operations of the Corporate Defendant and acted intentionally and maliciously and are
"employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are
jointly and severally liable with the Corporate Defendant.

14.     Upon information and belief, during the period from February 10, 2017 to the
present the Individual Defendants had authority over the management, supervision, and oversight
of the Corporate Defendant's affairs in general and exercised operational control over the
Corporate Defendant's home health aide employees and other employees and their decisions
directly affected the nature and condition of the home health care employees' employment.

15.     Upon information and belief, during the period from February 10, 2017 to the
present, the Individual Defendants  (1) had the power to hire and fire the home health aide
employees of the Corporate Defendant, (2) supervised and controlled the home health aide
employees' schedules and conditions of employment, (3) determined the rate and method of
payment of the home health aide employees, and (4) maintained employment records related to
the home health aide employees.

16.     Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

17.     Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since February 10, 2020 (or earlier time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

18.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

19.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

20.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

21.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are

a.     whether the Defendant employed the Collective Action members within the meaning of the FLSA;

b.     whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

c.     what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.     whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

e.     whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.   whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

g.   whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

h.   whether Defendant should be enjoined from such violations of the FLSA in the future.

22.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## <u>CLASS ALLEGATIONS</u>

23.    Plaintiff sues on her own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

24.    Plaintiff brings her New York Labor Law claim on behalf of all persons who were employed by Defendant at any time since February 10, 2017 (or previous date reached by any extension of the statute of limitations), to the entry of judgment in this case (the "Class Period"), who were not paid all their straight time wages, minimum wages (including those required by the NY Health Care Worker Wage Parity Act), spread of hour wages, and/or overtime wages and/or were not provided the notices required by the Wage Theft Prevention Act (the "Class").

25.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of the Class during the Class Period.

26.     The claims of Plaintiff are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

27.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

28.     Plaintiff is committed to pursuing her action and has retained competent counsel experienced in employment law and class action litigation.

29.     Plaintiff has the same interests in this matter as all other members of the class and Plaintiff's claims are typical of the Class.

30.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.  whether the Defendant employed the members of the Class within the meaning of the New York Labor Law;

b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and members of the Class;

c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.  whether Defendant failed and/or refused to pay the members of the Class for all hours worked by them as well as premium pay for hours worked in excess of forty hours per

workweek as well as spread of hours pay for hours worked a spread of more than ten

hours, within the meaning of the New York Labor Law;

e.  whether the Defendant is liable for all damages claimed hereunder, including but not

limited to compensatory, interest, costs and disbursements and attorneys' fees;

f.  whether the Defendant should be enjoined from such violations of the New York

Labor Law in the future; and

## STATEMENT OF FACTS

31.     Plaintiff LOUISE REID ("LOUISE" or "Plaintiff") was a home health aide

employed by A-Plus Care HHC Inc., Sofia Bakalinsky and Frederick Bakalinsky, its Co-Chief

Executive Officers and Spiros Botos, its Director of Operations (collectively "Defendants" or the

"Company"), from about October 7, 2020 until October 7, 2021 and then on January 7, 2023 (the

"time period").

32.     Defendants are an employment agency that sent LOUISE to work as a home

health aide for numerous customers located in Kings County in New York.

33.     LOUISE worked a 24-hour shift starting at 8:00 am on January 7, 2023 and was

never paid for these 24 hours or work.

34.     When LOUISE arrived to start the 24-hour shift on Saturday morning, LOUISE

was unable to telephone in to clock in because the time clock system said her ID was not correct.

35.     LOUISE texted her coordinator to report the problem, and the coordinator told

LOUISE that LOUISE was not in the system and to call back on Monday.

36.     On Monday, LOUISE called back and was told to send in a paper time sheet, so

LOUISE sent to the coordinator a time sheet on Tuesday.

37.     When the payroll date passed, LOUISE realized that LOUISE had not been paid

and complained to her coordinator and to payroll.

38.     Although LOUISE complained on or about January 14, 2023 and numerous times thereafter to her coordinator and to payroll about not getting paid for the 24-hour shift, Defendants have refused to pay her for this shift.

39.     During the time period, LOUISE maintained her own residence, and did not "live in" the homes of Defendants' clients or in the home of her employer, as her primary residence.

40.     While employed by Defendants, LOUISE generally worked more than 40 hours per week and was not paid time and one half for her hours worked over 40 in a work week.

41.     LOUISE worked 24-hour shifts for Defendants during her employment and at times worked 4 24-hour live in shifts in a week.

42.     During the time period, Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

43.     Even when Defendants had knowledge that a health aide was unable to get any sleep during the night or take any meal breaks, Defendants still illegally deducted 8 hours of sleep time and three hours of meal break time from the health aide's hours worked.

44.     Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

45.     Defendants had no policy to identify which aides were not provided a bed to sleep on during 24-hour live in shifts.

46.     Even when Defendants knew an aide was not given a bed to sleep on during 24-

hour live in shifts, Defendants did not pay the health aide for 8 hours of the aide's 24 hour shift.

47.     When LOUISE worked 24-hour shifts, LOUISE was required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

48.     When LOUISE worked 24-hour shifts, LOUISE was not permitted to leave the client unattended.

49.     LOUISE was only paid for approximately 13 hours of her 24-hours shifts. LOUISE was not paid any hourly rate for the other 11 hours worked.

50.     LOUISE was generally not permitted to leave the client's residence during her shift.

51.     Because Defendants' clients were often elderly and/or suffering from dementia, LOUISE did not get an opportunity to sleep for eight hours or 5 hours without any interruption.

52.     LOUISE did not get a one-hour break for each of three meals per day.

53.     LOUISE was often forced to combine her meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

54.     LOUISE did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which LOUISE worked a spread of more than ten hours.

55.     LOUISE also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all her hours worked and was not paid time and one half the minimum wage rate for her overtime hours and was not paid full time and one half her regular rate for her overtime hours.

56.     Medicaid paid Defendants for some or all of her services and the services of the other similar home health aide employees.

57.     Plaintiff's co-workers performed the same and/or similar work to that of herself and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

58.     The similar health aides did not "live in" the homes of Defendants' clients as their primary residences.

59.     The similar health aides generally worked more than 40 hours per week, but were not paid for every hour that they worked.

60.     The similar health aides were only paid for approximately 13 hours of their 24-hours shifts, and were not paid any hourly rate for the other 11 hours worked.

61.     The similar health aides were generally not permitted to leave the client's residence during their shift.

62.     When the similar health aides worked 24-hour shifts, they were required to stay overnight at the residences of Defendants' clients, and were required to be ready and available to provide assistance to Defendants' clients as needed.

63.     At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

64.     Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

65.     When LOUISE told the supervisor that LOUISE was unable to get any sleep during the night or any meal breaks, Defendants still deducted 8 hours of sleep time and three

hours of meal breaks from her hours worked.

66.     Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

67.     At all relevant times, Defendants have maintained a practice and policy of assigning LOUISE and similar health aides to work more than 40 hours per week without paying them one and one half times the basic minimum hourly rate for all hours worked in excess of forty per week, in violation of New York State Labor Law and the Wage Parity Act.

68.     Defendants' actions as described herein were intentional and not made in good faith.

69.     When LOUISE first started to work 24-hour shifts, LOUISE complained to her coordinator and to payroll, that LOUISE was not able to sleep during the night or get meal breaks but was not being paid for 8 hours of alleged sleep and 3 hours of meal breaks.  They responded that the Company does not pay more than 13 hours for a 24-hour shift.

70.     LOUISE was not able to get 5 hours of uninterrupted sleep or 8 hours of sleep during 24 hour live in shifts because LOUISE generally had to get up at least every 2-3 hours to attend to the client, which included among other services, to take the client to the bathroom, to get the client a glass of water, to calm the client when the client awoke in stress, to clean the client's bed when the client urinated or defecated in the bed and/or to change the client's pajamas.

71.     Some of LOUISE's clients had Alzheimer's Disease and never continuously slept for more than half an hour at any time.

72.     Also, for a number of clients, LOUISE was required to turn the patient every 2-4

hours and thus was not able to get 5 hours of uninterrupted sleep.

73.    Also, for a number of clients, LOUISE was required to check their diapers every two hours and thus was not able to get 5 hours of uninterrupted sleep.

74.    During the time period, LOUISE was not paid full regular wages for all her hours worked and was not paid overtime wages for all of her hours worked over forty in a workweek ("overtime").

75.    During the time period, LOUISE often worked for 24 hours staying overnight at the client's house, and on these days was only paid for 13 hours, despite the fact that her sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented her from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that LOUISE was not given any time off for meal breaks.

76.    LOUISE also generally signed in and out using the client's land line phone. When LOUISE clocked out, LOUISE generally entered codes showing the types of work that LOUISE had performed.  At times LOUISE filed handwritten time sheets. There were no codes to report not getting sleep or breaks during 24-hour shifts.

77.    During the time period, LOUISE did not receive a meal break because LOUISE was on call or working during her break and regularly interrupted by the client while eating.

78.    During the time period, LOUISE was not paid for all her hours worked and was not paid for her hours worked over 40 hours a week ("overtime hours") at time and one half her regular wages and at times was not paid for all her hours at the minimum wage rate.

79.    During the time period, LOUISE was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principal place of business and telephone number and her specific rate of pay as required by the New York Wage

Theft Prevention Act.  LOUISE has not been given any specific notice of this information to sign and has not signed any such notice.

**CLAIM I**
**FAIR LABOR STANDARDS ACT**

80.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

81.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

82.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

83.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

84.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

85.     At all relevant times, the Defendants had a policy and practice of refusing to pay its employees minimum wages and/or overtime wages equal to time and one half their employees' regular wages for hours worked over forty in a work week.

86.     As a result of the Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members overtime wages and/or minimum wages for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

87.     As a result of the Defendants' failure to record, report, credit and/or compensate

its employees, including Plaintiff and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

88.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

89.     Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

90.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     At all relevant times, Plaintiff and the members of the Class were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

92.     Defendants willfully violated Plaintiff's rights, and the rights of the members of the Class, by failing to pay them wages in violation of the New York Labor Law and its regulations.

93.     The Defendants' New York Labor Law violations have caused Plaintiff and the members of the Class, irreparable harm for which there is no adequate remedy at law.

94.     Due to the Defendants' New York Labor Law violations, Plaintiff and the

members of the Class are entitled to recover from Defendants their unpaid wages, unpaid

minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys'

fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et

seq.

95.     Defendants willfully violated Plaintiff's rights by failing to provide his proper

notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab.

Law § 198(1-a) (enacted on April 9, 2011).

96.     As a result of Defendants' violation of the New York Wage Theft Prevention Act,

Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

**CLAIM III**
**(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract**
**With New York State)**

97.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

98.     Upon information and belief, at all times relevant to this complaint, Defendant

were required to certify and did certify that they paid Plaintiff and members of the Class wages

as required by NY Health Care Worker Wage Parity Act.

99.     The agreement to pay Plaintiff and the Class wages as required by the NY Health

Care Worker Wage Parity Act was made for the benefit of the Plaintiff and the Class.

100.    Defendant breached their obligation to pay Plaintiff and the Class all wages they

were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs and

members of the Class were injured.

101.    Plaintiff and the Class, as third party beneficiaries of Defendants' contract with

government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act,

and as persons protected by the NY Health Care Worker Wage Parity Act are entitled to relief

for the breach of this contractual obligation and the violation of this Act, plus interest.

## CLAIM IV
### (Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

102.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

103.     Under the common law doctrine of "unjust enrichment" insofar as Defendants, by

their policies and actions, benefited from, and increased their profits and personal compensation

by failing to pay Plaintiff and the Class: (1) all wages due for work performed; (2) an extra hour

at the minimum wage  for working a "spread  of hours" in excess of 10 hours or a shift longer

than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York

Health Care Worker Wage Parity Act.

104.     Defendant accepted and received the benefits of the work performed by Plaintiff

and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for

Defendants to reap the benefits of Plaintiff's and the Class' labor, without paying all wages due,

which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the

New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

105.     Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount

equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

## CLAIM V
### (Violation of Wage Parity Act Minimum Wage Requirement)

106.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this

Complaint.

107.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiff and members of the Class wages as required by NY Health Care Worker Wage Parity Act.

108.     Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiff and the members of the Class minimum wages under the NY Health Care Worker Wage Parity Act.

109.     Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiff and members of the Class were injured.

110.     Plaintiff and the Class are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

## CLAIM VI
### (Breach of Contract-Wages)

111.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

112.     Plaintiff and the members of the class entered into contracts with the Defendant under which Plaintiff and the members of the Class were to provide home health aide and maid services and Defendants were required to pay (a) wages as required by law, (b) wages equal to time and one half the regular wage rate for hours worked during Federal holidays and also (c) a one week paid vacation annually.

113.     Plaintiff and the members of the Class fulfilled their obligations under the contracts but Defendant failed to pay the wages as required by the contracts.

114.     As a result of Defendants' breach, Plaintiff and the members of the Class are

entitled to recover damages, plus interest.

**CLAIM VII**
**(Living Wage Act Claim)**

115.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

116.    NYC Admin. Code § 6-109 provides that an employer whose employees perform work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

117.    NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

118.    The "living wage" and "health benefits" or "health benefits supplement" are the

119.    wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code.

120.    Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

121.    Named Plaintiff and other members of the putative class furnished labor to Defendant in furtherance of its performance of the City Service Contract(s).  Upon information and belief, Defendant willfully paid Named Plaintiff and the other members of the putative class less than the rates of wages and benefits to which Named Plaintiff and the other members of the putative class were entitled.

20

122.     Defendant's actions as described herein were intentional and not made in good faith.

123.     Upon information and belief, the City Service Contract(s) entered into by Defendant contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

124.     Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiffs.

125.     Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

126.     Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

127.     Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

128.     By reason of its breach of the City Service Contract(s), Defendant is liable to

129.     Plaintiffs for an amount to be determined at trial, plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members and members of the Class, respectfully requests that this Court grant the following relief:

a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b.  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.  An order tolling the statute of limitations;

f.  An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

g.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

h.   An award of prejudgment and postjudgment interest;

i.   An award of costs and expenses of this action together with reasonable attorney's and expert fees;

j.   Such other and further relief as this Court deems just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: New York, New York
February 10, 2023

LAW OFFICE OF WILLIAM COUDERT RAND

William Coudert Rand, Esq.
*Attorney for Plaintiff*, Individually and on
Behalf of All Persons Similarly Situated
501 Fifth Avenue, 15th Floor
New York, New York 10017
Tel: (212) 286-1425
Fax: (646) 688-3078
Email: wcrand@wcrand.com

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **A-Plus Care HHC Inc., Sofia Bakalinsky and Frederick Bakalinsky, ET AL.** to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     _____     Louise Reid_____
Signature                             Date        Print Name

8