William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Avenue, 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LOUISE REID,                                          : ECF
Individually and on Behalf of All Other      : 1:23-cv-01163 (JPC) (SDA)
Persons Similarly Situated,                      :
                                                                 :
                                  Plaintiff,               :
                                                                 :
          -against-                                        :
                                                                 :
A-PLUS CARE HHC INC., SOFIA BAKALINSKY,    :
FREDERICK BAKALINSKY, SPIROS BOTOS, and   :
JOHN DOES #1-10,                                 :
                                                                 :
                                  Defendants.          :
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION**
**FOR CERTIFICATION OF CLASS AND COLLECTIVE ACTION**

Dated:  New York, New York
           September 15, 2024

                              LAW OFFICE OF WILLIAM COUDERT RAND
                              William Coudert Rand, Esq.
                              Attorney for Plaintiff, Individually,
                              and on Behalf of All Other Persons Similarly Situated
                              501 Fifth Avenue, 15th Floor
                              New York, New York 10017
                              Tel: (212) 286-1425

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT……………………………………….    1

I.      INTRODUCTION……………………………………………..    1

II.     ARGUMENT – COLLECTIVE ACTION..………………...    5

        A.      Collective Actions under the FLSA……………………    5

        B.      The Factual Nexus is Established in this Case…………    7

        C.      The Collective Action Notice…………………………    7

        D.      Defendants Should Disclose the Names and Last Known
                Addresses and Email Addresses of Prospective Plaintiffs
                and Should Post the Notice Conspicuously………………    8

III.    ARGUMENT – CLASS ACTION………..…………………    10

        A.  A Class Action is Appropriate..................................    10

        B.  The Class is So Numerous that Joinder is Impractical..    13

        C.  Typicality and Commonality.......................................    14

        D.  Representative and Counsel Are Adequate..................    17

        E. The Requirements of Rule 23(b)(3) Are Met…………..    18

CONCLUSION……………………………………………………...    22

# TABLE OF AUTHORITIES

CASES                                                                                    Page

Alonso v. Uncle Jack's Steakhouse, Inc.,
    648 F. Supp. 2d 484 (S.D.N.Y. 2009)…………………………………    4

Andryeyeva v. New York Health Care Inc.,
    33 N.Y.3d 152 (N.Y. 2019)……………………………………………    3

Atakhanova v. Home Family Care, Inc.,
    2020 U.S. Dist. Lexis 129221 (E.D.N.Y. July 22, 2000)…………….    4

Atkins v. General Motors Corp.,
    701 F.2d 1124 (5th Cir. 1983)…………………………………………    9

Baba v. Grand Central Partnership, Inc.,
    2000 WL 1808971, 2000 U.S. Dist. LEXIS 17876
    (S.D.N.Y. Dec. 8, 2000)…………………………………………………    9

Bonilla v. Las Vegas Cigar Co.,
    61 F. Supp. 2d 1129 (D. Nev. 1999)…………………………………    9

Brand v. Comcast Corporation,
    2012 U.S. Dist. Lexis 137714 (N.D. Ill. September 26, 2012)……….    3

Braunstein v. Eastern Photographic Laboratories, Inc.
    600 F. 2d 335 (2d Cir. 1979)…………………………………………    8

Cook v. United States,
    109 F.R.D. 81 (E.D.N.Y. 1985)………………………………………    10

Cruz v. Hook-SuperX, LLC,
    2010 U.S. Dist. Lexis 81021 at *6 (S.D.N.Y. August 5, 2010)……….    3

Cruz v. Ultimate Care, Inc.,
    2024 U.S. Dist. Lexis 58239 (E.D.N.Y. March 29, 2024)…………….    4

Delaney v. Geisha NYC, LLC,
    261 F.R.D. 55 (S.D.N.Y. 2009)………………………………………    5

Does I thru XXIII v. Advanced Textile Corp.,
    214 F.3d 1058 (9th Cir. 2000)…………………………………………    9

Enriquez v. Cherry Hill Market Corp.,
    2012 U.S. Dist. LEXIS 17036
    (E.D.N.Y. Feb. 10, 2012)………………………………………………    5

George v. Companions of Ashland, Inc.,
     2016 U.S. Dist. Lexis 120706 (N.D. Ohio Sept. 7, 2016)……………..   2

Gjurovich v. Emmanuel's Marketplace, Inc.,
     282 F. Supp. 2d 101 (S.D.N.Y. 2003)…………………………………   8

Guzman v. Americare,
     209 A.D.3d 489 (1st Dept. 2022)………………………………………   4

Hoffman v. Sbarro, Inc.,
     982 F. Supp. 249 (S.D.N.Y. 1997)...………………………...……….   4, 9

Hoffman-La Roche, Inc. v. Sperling,
     493 U.S. 165 (1989)………………………………………………………..   8-12

Iglesia-Mendoza v. La Belle Farm, Inc.,
     239 F.R.D. 363 (S.D.N.Y. 2007)………………………………………   5, 8

Indergit v. Rite Aid Corp.,
     2010 U.S. Dist. Lexis 60202 (S.D.N.Y. June 15, 2010)……………….   3

Jacob v. Duane Reade, Inc.,
     2012 U.S. Dist. Lexis 11053 (S.D.N.Y. Jan. 26, 2012)……………...   6

Jasper v. Home Health Connection, Inc.,
     2016 U.S. dist. Lexis 71616 (S.D. Ohio June 1, 2016)……………….   2

Kinkead v. Humana at Home, Inc.,
     330 F.R.D. 338 (D. Conn. 2019)………………………………………   4

Konstantntynovska v. Caring Professionals, Inc.,
     215 A.D.2d 405 (1st Dept. 2023)………………………………………   4

Moung Su Kim v. Kap Sang Kim,
     2010 U.S. Dist. LEXIS 72236, 2010 WL 2854463,
     (E.D.N.Y. July 19, 2010)……………………………………………..   10

Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,
     645 F.2d 757 (9th Cir. 1981)…………………………………………   9

Schwed v. General Electric Co.,
     159 F.R.D. 373 (N.D.N.Y. 1995)……………………………………..   4

Severino v. Avondal Care Group, LLC,
     2022 U.S. Dist. Lexis 197117 (S.D.N.Y. Oct. 29, 2022)
     (Hon. Stewart D. Aaron)……………………………………………...   4

Trinidad v. Breakaway Courier Systems, Inc.,
    2007 WL 103073 (January 12, 2007 S.D.N.Y)……………………..    8

Torres v. Nature Coast Home Care LLC,
    2016 U.S. Dist. Lexis 139745 (M.D. Fla. Oct. 7, 2016)………………    2

Whitehorn v. Wolfgang's Steakhouse, Inc.,
    767 F. Supp.2d 445, 449 (S.D.N.Y. 2011)……………………………    10

Winfield v. Citibank, N.A.,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012) (J. Koeltl)……………………    3

Young v. Cooper Cameron Corp.,
    229 F.R.D. 50 (S.D.N.Y. 2005)……………………………………    4

STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA")………………    Passim

Fed. R. Civ. P. Rule 23……………………………………………………    5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LOUISE REID,                                          : ECF
Individually and on Behalf of All Other               : 1:23-cv-01163 (JPC) (SDA)
Persons Similarly Situated,                           :
                                                      :
                        Plaintiff,                    :
                                                      :
        -against-                                     :
                                                      :
A-PLUS CARE HHC INC., SOFIA BAKALINSKY,               :
FREDERICK BAKALINSKY, SPIROS BOTOS, and               :
JOHN DOES #1-10,                                      :
                                                      :
                        Defendants.                   :
-------------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff LOIUSE REID ("REID") ("Named Plaintiff") on behalf of herself and on behalf of

each and all other persons similarly situated, by her attorney, submits this memorandum of law in

support of her Motion for Certification of Class and Collective Action (hereafter, the "Motion").

## I.    INTRODUCTION

In this action, among other claims for relief, Plaintiff seeks to recover unpaid minimum

wage and overtime compensation on behalf of herself and other similarly situated home health aide

employees of Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

("FLSA").

The Named Plaintiff REID was employed by Defendants as a home health aide.  She and

other similar employees worked numerous 24-hour live in shifts per week (in excess of 40 hours)

and were only paid for 13 hours of each shift despite the fact that they did not get 5 hours of

uninterrupted sleep and did not get 3 hours of meal breaks.  The class should be certified because

Defendants had no procedures for identifying which health aides did not receive meal breaks

and/or 5 hours of uninterrupted sleep and/or 8 hours of sleep during 24-hour live in shifts and thus

1

should not have had 8 hours of sleep and 3 hours of breaks deducted from their 24-hour live in shifts. *See Andryeyeva v New York Health Care, Inc.,* 2019 N.Y. Lexis 617 (New York Court of Appeals, March 26, 2019) (holding that court should certify class where defendant had no procedure in place to identify which health aides did not get 5 hours of uninterrupted sleep and 8 hours of sleep and 3 one hour breaks and thus were not eligible to have 8 hours of sleep and 3 hours of breaks deducted from their 24-hour shifts).

As shown by the Declarations from Named Plaintiff Louise Reid and putative class member Jane Tapper, Defendants had an illegal policy to deduct 8 hours of sleep and 3 hours of meal breaks from health aides' 24-hour shift hours. Defendants deducted hours from sleep even when Reid and Tapper reported on their end of shift duty sheets that they had turned the patient every two hours or checked and/or changed the patient's diaper every two hours during the 24-hour live in shift. In such cases, it was clear that Reid and Tapper did not get 5 hours of uninterrupted sleep and therefore Defendants had no right to deduct 8 hours for sleep. See Declarations of Reid and Tapper.

Furthermore, Defendants produced pay records, duty sheets and time and attendance records for 70 sample employees randomly selected by Plaintiff from the full class list ("Sample Employees"). Defendants provided lists of employees who worked 24-hour live in shifts in the year 2017 (56 employees), 2018 (87 employees), 2019 (120 employees), 2020 (120 employees), 2021 (121 employees) 2022 (101 employees) and 2023 (78 employees), and Plaintiff selected 10 sample employees from each list for the purpose of sample discovery. The documents of the Sample Employees demonstrate Defendants' illegal pay policy. See Rand Declaration and Exhibits.

The payroll records of the Sample Employees show that they were only paid for 13 hours of their 24-hour live in shifts and show that it was the policy of A-PLUS CARE HHC INC. to pay its

health aide employees for only 13 hours of their 24-hour live in shifts as they deducted 8 hours for sleep and 3 hours for 3 one hour meal breaks. All of the Sample Employee records show that the employees who worked 24-hour live in shifts were not ever paid for the 8 hours and sleep and 3 hours of meal breaks that were illegally deducted from their 24 hours worked. See Rand Declaration. 52 of the 70 Sample Employees reported on their duty sheets that they turned patients every two hours and/or checked and/or changed patients' diapers every two hours. See Exhibit B to the Rand Declaration. Nevertheless, Defendants did not pay them more than 13 hours for their 24-hour live in shifts. See Rand Declaration at Exhibits C, D, E, F, and G which are the duty sheets, attendance records and payroll records of 5 Sample Employees that show that when the Sample Employee reported turning the patient an/or checking and/or changing the diaper every two hours, the Sample Employee was still illegally not paid more than 13 hours for the 24-hour live in shift.

The Court should certify the Federal collective action under the FLSA and class action under New York State law because Defendants had an illegal policy not to pay home health aides their full 24 hours worked during their 24-hour live in shifts and therefore failed to pay for regular hours and overtime hours as required by Federal regulations and New York State Law. See 29 CFR 552.109 revised effective January 1, 2015.

In *Andryeyeva v. New York Health Care Inc.*, 33 N.Y.3d 152 (N.Y. 2019), a case brought by Plaintiffs' counsel, the New York Court of Appeals held that employers had to pay at least the minimum wage for all 24 hours of an HHA's 24-hour shift, unless the aide was afforded 8 hours of sleep, of which five is uninterrupted, and three uninterrupted hours for meals. An aide receiving any less than the required sleep and mail time sets off a "hair trigger" requiring that all 24 hours be paid at the minimum wage. *Id.,* 33 N.Y.3d at 179. Since that decision, numerous

New York courts have certified class actions consisting of HHAs claiming, as here, that they were not afforded the required sleep and meal time during 24-hour shifts. *See, e.g., Andryeyeva v. New York Health Care Inc.,* No. 14309/2011, 2020 WL 2510472, (Sup. Ct. Kings Cty. May 15, 2020); *Zuparov v. Bestcare Inc.,* No. 506914/15, 2021 WL 256625, (Sup. Ct. Kings Cty. Jan. 22, 2021); *Bernarez v. Alternate Staffing, Inc.*, No. 150826/17, 2020 WL 5590256, (Sup. Ct. New York Cty. Sep. 17, 2020); *Troshin v. Stella Orton Home Care Agency, Inc.*, 70 Misc. 3d 1223(A), 2021 WL 956245 (Sup. Ct. New York Cty. 2021); *Kurovskaya v. Project O.H.R.* No. 150480/2016, 2020 WL 7046644 (Sup. Ct. N.Y. Cty. Dec. 01, 2020). When appealed, 24-hour shift class certification decisions have been universally affirmed, including <u>Guzman v. Americare</u>, 209 A.D.3d 489 (1st Dept. 2022) and *Konstantntynovska v. Caring Professionals, Inc.,* 215 A.D.2d 405 (1st Dept. 2023).

The federal courts have also certified classes based on the failure to pay health aides for their full 24-hour live in shifts.  *See Kinkead v. Humana at Home, Inc.,* 330 F.R.D. 338 (D. Conn. 2019) (certifying class of aides claiming illegally paid only 13 hours per shift); *Atakhanova v. Home Family Care, Inc.*, 2020 U.S. Dist. Lexis 129221 (E.D.N.Y. July 22, 2000) (same); *Severino v. Avondal Care Group, LLC*, 2022 U.S. Dist. Lexis 197117 (S.D.N.Y. Oct. 29, 2022) (Hon. Stewart D. Aaron) (certifying collective of aides who worked at least 2 24-hur live in shifts in a week); *Cruz v. Ultimate Care, Inc.,* 2024 U.S. Dist. Lexis 58239 (E.D.N.Y. March 29, 2024) (certifying collective of aides who worked more than two 24-hour live in shifts in a week).

Thus the actions should be certified as a class and collective action defined as aides who worked at least one 24-hour live in shift.

## II.    ARGUMENT-COLLECTIVE ACTION

### A.    <u>Collective Actions under the FLSA</u>

The FLSA expressly permits the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of minimum wage and overtime compensation.  FLSA § 216(b) provides in pertinent part as follows:

> Any employer who violates the provisions of section 206 [requiring payment of minimum wage] or section 207 [requiring payment of overtime compensation for hours worked in excess of 40 per week] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  . . . An action to recover liability . . . may be maintained against any employer .  .  .  by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

In order to maintain a collective action under FLSA § 216(b), the named plaintiff must demonstrate that other, potential plaintiffs are "similarly situated." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). This requirement is satisfied if the named plaintiff demonstrates the existence of a "factual nexus between the [named plaintiff's] situation and the situation of the other current and former [employees]." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997).  Specifically, the named plaintiff need only make a "modest factual showing sufficient to demonstrate the [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Sbarro*, at 261; *see also Gjurovich*, 282 F. Supp. 2d at 104.  In the pre-discovery stage whether the plaintiff's burden, of showing that there is a factual nexus between the claims of the individual plaintiff and potential opt-in plaintiffs, has been met is based on the pleadings and any affidavits. *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 487-88 (S.D.N.Y. 2009).  The pleadings and affidavits must only sufficiently meet

the "minimal" burden of a "modest factual showing" for the court to grant a plaintiff's motion for conditional certification under FLSA.  Id. at 488 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Gjurovich* 282 F. Supp. 2d at 106).  The named plaintiff is not required to prove that potential plaintiffs shared identical positions or performed identical work. Schwed v. General Electric Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995).  "The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'"  *Sbarro*, 982 F. Supp. at 261.

Furthermore, "courts routinely allow plaintiffs to rely on their own declarations for purposes of conditional certification." *Enriquez v. Cherry Hill Market Corp.*, 2012 U.S. Dist. LEXIS 17036 at *4-5 (E.D.N.Y., Feb. 10, 2012) (citing *Iglesia-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class."); *Guzman v. VLM, Inc.*, 2007 U.S. Dist. LEXIS 75817, 2007 WL 2994278 at *4 (E.D.N.Y. Oct. 11, 2007) ("It is hardly realistic, or consistent with the lenient standards of the notice phase of FLSA litigation, to expect plaintiffs to have any more specific knowledge of how much their coworkers are paid than [allegations of conversations with named individuals in which those individuals claimed not to have been paid overtime.]")).  Finally, there is no requirement in this Circuit that a certain number of similarly situated employees opt-in before a class is conditionally certified by a court.  *Enriquez*, 2012 U.S. Dist. LEXIS at *4 (citing *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)).

As demonstrated by the foregoing authority, collective actions under the FLSA are materially different from class actions under Fed. R. Civ. P. 23.  Rule 23 requires the proponent of

the class action to demonstrate the existence of several factual circumstances, including numerosity of the proposed class, common questions of law or fact, typicality of claims or defenses, and adequate and fair protection of the interests of the class by the representative parties. Fed. R. Civ. P. 23. These circumstances are simply not applicable to collective actions under the FLSA, which requires the named plaintiff to show only that potential plaintiffs likely exist. As discussed below, the declarations of the Named Plaintiffs submitted herewith clearly and sufficiently make the requisite showing in this case.

        **B.**       **<u>The Factual Nexus is Established in this Case</u>**

The declarations of the Named Plaintiff REID and the putative Class and Collective Member Jane Tapper, filed contemporaneously herewith (collectively, the "Declaration"), and the employment documents of the 70 sample employees attached as Exhibits to the Rand Declaration demonstrate that Defendants adopted and adhered to a policy to pay for only 13 hours of their health aide employees' 24-hour live in shifts, thereby not paying wages for 11 hours of each 24-hour live in shift which resulted in a failure to pay minimum wages and overtime, in violation of FLSA. *See* the Rand Declaration.

During the time period, Defendants hired at least 40 other similar home health aides/maids, who were similarly paid for only 13 hours of their 24-hour live in shifts. REID and Tapper spoke to other home health aide employees of Defendants, who told them that they also received pay for only 13 hours of a 24 hour shift even though they worked during the full shift and did not get 5 hours of uninterrupted sleep. See Declarations of REID and Tapper.

        **C.**       **<u>The Collective Action Notice</u>**

FLSA § 216(b) has no specific provision for issuing notice to prospective plaintiffs in collective actions. However, it is well established that district courts have the power to send such a notice to potential plaintiffs. *E.g., Braunstein v. Eastern Photographic Laboratories, Inc.* 600 F.

2d 335, 335-36 (2d Cir. 1979); *Sbarro*, 982 F. Supp. at 261(citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989); *Gjurovich*, 282 F. Supp. 2d at 104; *Trinidad v. Breakaway Courier Systems, Inc.*, 2007 WL 103073, 2007 U.S. Dist. LEXIS 2914 (January 12, 2007 S.D.N.Y) (Judge Sweet) (granting collective action approval to walking couriers).  It is important to note that, in issuing a notice to potential plaintiffs, the Court does not adjudicate the merits of the claims of either the named or potential plaintiffs, or determine that the potential plaintiffs are in fact similarly situated with the named plaintiff.  As Magistrate Judge Lisa Margaret Smith of the Southern District in Westchester County noted:

> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs.  I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties.  . . . Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination-a determination that can be modified or reversed after discovery is complete.

*Gjurovich*, 282 F.2d at 105 (citations omitted).

Plaintiffs separately submit herewith a proposed Notice of Class and Collective Action and Opportunity to Join.  This notice comports to the specific requirements exhaustively enumerated by Judge Smith in *Gjurovich*.  *Supra*, at 106-109.

> **D.      Defendants Should Disclose the Names and Last Known Addresses and Email Addresses of Prospective Plaintiffs and Should Post the Notice Conspicuously**

Only Defendants know the names and addresses of potential plaintiffs in this case.  The Supreme Court has confirmed this Court's inherent authority to require Defendants to disclose that information so that Plaintiffs' counsel can circulate the Notice of Lawsuit and Opportunity to Join.  *Hoffman-La Roche, Inc. v. Sperling*, 110 S. Ct. 482, 486 (1989).  In addition, Defendants should be ordered to provide this information in both paper and digital format to expedite the distribution of the notices, and the proposed Order submitted herewith so provides.

Plaintiffs' motion for permission to authorize notice to potential class members is critical because the statute of limitations for claims brought under the Fair Labor Standards Act may not be tolled for a particular plaintiff until he or she files with this Court a "Consent to Join" form. *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1133 (D. Nev. 1999); *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760 (9th Cir. 1981) ("It is true that the FLSA statute of limitations continues to run until a valid consent is filed."); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, (9th Cir. 2000); *Sbarro*, 982 F. Supp. at 262; 29 U.S.C. § 216(b). The implication of the continued running of the statute of limitations is obvious: each day that passes before notice is given causes prejudice to the absent plaintiffs. The statute of limitations demonstrates not only the need for the distribution of notice to purported class members, but the expediency in which the distribution must occur.

Plaintiffs are not requesting unusual or extraordinary relief, but are requesting relief clearly within the discretion of this Court. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 171 (1989). The United States Supreme Court recognized the need for notice in actions like this and also approved Court intervention and authorization of notice, stating:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time. . . . The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.

*Hoffmann-La Roche*, 493 U.S. at 171-172 (1989); *Sbarro*, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("certainly, it is unlikely that Congress, having created a procedure for

representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.").

The notice should also be conspicuously posted in the workplace. Courts in this Circuit routinely grant such requests. *See, e.g., Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. Lexis 11053 at *29 (S.D.N.Y. Jan. 26, 2012); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp.2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Moung Su Kim v. Kap Sang Kim*, 2010 U.S. Dist. LEXIS 72236, 2010 WL 2854463, at * 1 (E.D.N.Y. July 19, 2010). Thus, the Court should order that notice of this action be posted.

In the Second Circuit, courts have allowed six-year notice periods "in conditionally certified FLSA collective actions which also involve NYLL claims," on account of the NYLL's six-year statute of limitations. *Franze v. Bimbo Foods Bakeries Distrib.*, LLC, No. 17 Civ. 3556 (NSR) (JCM), 2019 U.S. Dist. LEXIS 54426, 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases). Here, there is a parallel class so to avoid confusion, the collective notice should cover 6 years.

## ARGUMENT – CLASS ACTION

### A.    A Class Action is Appropriate

"In our complex modern economic system where a single harmful act may result in damages to a great many people there is a particular need for the representative action as a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Escott v. Barchris Const. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). Thus, one of the purposes of a class action is to provide a remedy for those who have been injured by a fraudulent course of conduct but who, because of their economic situation or ignorance, are unable to protect themselves by separate lawsuits. *Moscarelli v. Stamm*,

288 F. Supp. 453, 461 (E.D.N.Y. 1968); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The Advisory Committee [for the 1966 Rule 23 revision] had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.").

Thus, in order to give effect to this purpose, the Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997), and "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y.2005). Courts in this District regularly permit classing state wage claims along with a federal FLSA collective action. *Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012); *Iglesias- Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193 (S.D.N.Y. 2006); *Noble v. 93 University Place Corporation,* 224 F.R.D. 330 (S.D.N.Y. 2004); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001).

In *Ansoumana*, the seminal case in this area, the court held that classing a state claim in no way conflicted with the FLSA's collective action procedures and there was a "substantial judicial interest to avoid additional and unnecessary lawsuits of similar issues in other state and federal courts." 201 F.R.D. at 89. The court held that because the FLSA claims and the state wage claims "arise from the same nucleus of operative facts, are substantially related to each other, and naturally would be treated as one case and controversy" the state claims ought to be brought with the federal under doctrines of supplemental jurisdiction. *Id.* at 93.

Courts in this District have not had difficulty administering state class actions and FLSA collective actions in the past. There is no requirement that the procedural rules of state class actions should be adopted into federal class actions. In *Shady Grove Orthopedic Associates, P.A. v.*

11

*Allstate Ins. Co.,* the United States Supreme Court held that federal class actions based on state law

claims were to be governed by Rule 23 and not by state class rules. 130 S. Ct. 1431 (2010).

The class notice required by a combined FLSA collective action and a state class is not

too complex to be manageable. "[I]t is true that the maintenance of an opt-in FLSA collective

action concurrently with an opt-out Rule 23(b)(3) class action on the state law claims raises

particular challenges from the communications point of view. The Court is confident, however,

that, with appropriate attention from able counsel and the Court, class members can be afforded

effective notice that will appropriately protect their rights and make clear their opportunities in

connection with this litigation." *Smellie v. Mount Sinai Hosp.*, No. 03CIV.0805 (LTS) (DFE),

2004 WL 2725124, *7 (S.D.N.Y. Nov. 29, 2004). The proposed notice submitted by Plaintiffs

shows that there is no inherent complexity too great for reasonable notice to be practicable.

The Second Circuit clarified the court's responsibilities in determining a Rule 23 class

certification. In *Initial Public Offering Securities Litigation v. Merrill Lynch & Co., Inc.* 471 F.3d

24, 41 (2d Cir. 2006), it stated that "a district judge may certify a class only after making

determinations that each of the Rule 23 requirements has been met." The court went on to find that

the fact that determining a Rule 23 requirement overlapped with a merits review did not preclude

such a review. The certifying court should not make any factual findings or merits determinations

that are not necessary to the Rule 23 analysis, however, and any factual determinations made at the

certification stage are not binding on a subsequent fact-finder, even the certifying court. *Id.* at 41.

"A motion for class certification should not ... become a mini-trial on the merits." *Lewis

Tree Serv., Inc. v. Lucent Techs.*,211 F.R.D. 228, 231 (S.D.N.Y. 2002). "The dispositive

question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but

rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages.com, LLC,* No.

10 CIV. 7318 PGG, 2012 U.S. Dist. LEXIS 46539, 2012 WL 1097350, at *12 (S.D.N.Y. Mar.

31, 2012) (*quoting Lucent Techs.*, 211 F.R.D. at 231). In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide "whether the constituent issues that bear on [Defendants'] ultimate liability are provable in common." *Myers v Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 1020) (emphasis added). *Flores*, 284 F.R.D. at 122.

### B.      The Class is So Numerous that Joinder is Impractical

Courts do not have a bright line rule for numerosity. Plaintiffs must merely show that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "Impracticable" simply means difficult or inconvenient, not impossible. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). In satisfying Rule 23's numerosity requirement, Plaintiffs do not need to provide a precise number for the class size. *See Robidoux*, 987 F.2d at 935; *In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475, 494 (S.D.N.Y. 1989) ("Since the numerosity requirement speaks in terms of impracticability rather than impossibility, plaintiffs need not enumerate the precise number of potential plaintiffs in the class when reasonable estimates will suffice."). Generally, courts will find that the numerosity requirement has been satisfied when the class compromises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer. *Novella v. Westchester Cnty.*, 443 F. Supp. 2d 540, 546 (S.D.N.Y.2006), *vacated on other grounds*, 661 F.3d 128 (2d Cir. 2011), *citing Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Here, Defendants have shown that there are over 70 employees in the class as the there are 70 Sample Employees  See Rand Declaration.

However, even if the proposed class contained fewer than 40 members, a finding of numerosity and certification of a class would be appropriate here, as determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also*, *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407

(W.D.N.Y. 2011) (16 members); *Novella*, 443 F. Supp. 2d at 548 (24 members); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (28 members); *Slanina v. William Penn Parking Corp.*, 106 F.R.D. 419, 423 (W.D. Pa.1984) (25 members); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 105 F.R.D. 506 (S.D. Ohio 1985) (23 members).

### C.    Typicality and Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," whereas Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." "The commonality and typicality requirements, together, require Plaintiffs to show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010). The requirement of typicality, Rule 23(a)(2), overlaps or merges with that of commonality, Rule 23(a)(3). *Iglesias-Mendoza*, 239 F.R.D. at 370-71 ; *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 307 (S.D.N.Y. 2004) (*citing Marisol*, 126 F.3d at 376) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).").

"Even a single common legal or factual question will suffice" to satisfy the commonality requirement as to a particular claim. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009); *Duling*, 267 F.R.D. at 96. Here, there are numerous "questions of law or fact common to the class" such as:

1.  Whether Defendants paid aides for only 13 hours per 24-hour shift; and
2.  Whether Defendant had any procedures to determine if aides obtained 5 hours of uninterrupted sleep and 8 hours of sleep and three 1 hour meal breaks during 24-hour live in shifts; and

3. Whether Defendant should be liable for liquidated damages.

With these common questions, Plaintiffs have established commonality. *See Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification"); *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 333 (S.D.N.Y. 2009); (commonality met where complaint raised same claims on behalf of proposed class members that, *inter alia*, Defendants failed to pay plaintiffs overtime compensation); *Iglesias-Mendoza*, 239 F.R.D. at 371 (commonality met where complaint raised questions of law and fact common to all class members, including, *inter alia*, factual questions regarding defendants' payroll practices and overtime policy, and all class members would rely on same allegedly wrongful conduct of defendants and muster same legal arguments in support of their New York Labor Law claims).

"The crux of [the typicality] requirement[ ] is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Marisol*, 126 F.3d at 376 (internal citation omitted); *accord Hirschfeld v. Stone*, 193 F.R.D. 175, 182-83 (S.D.N.Y. 2000). Specifically, the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ... irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux*, 987 F.2d at 936-37; *accord Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). However "there is no requirement that the precise factual circumstances of each class plaintiff's claim be shared by the named plaintiff." *Gortat v. Capala Broths., Inc.*, No. 07-CV-3629 (ILG), 2010 WL 1423018, at *4 (E.D.N.Y. Apr. 9, 2010). The factual background of the named plaintiffs' claim need not be identical to that of the putative class

members as long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. N.Y. 1999) (*citing Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995)). Here, the Named Plaintiff's claims are typical of the claims of the class insofar as all claims arise from Defendant's practice of paying the class a fixed amount for 24 hour shifts and failing to pay minimum wages and overtime and spread of hours pay. All putative class members have the same legal claims.

In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003). Although "the mere existence of individualized factual questions with respect to the class representative's claims will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Baffa v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (*citation omitted*).

Typicality is absent where the named plaintiffs are "'subject to unique defenses which threaten to become the focus of the litigation.'" *Duling,* 267 F.R.D. at 97. Plaintiff is not aware of any individual defenses. Thus, Plaintiff's claims, which resulted from Defendant's uniform pay policies and practices, are well within Fed. R. Civ. P. 23's notion of commonality and typicality. *Robidoux*, 987 F.2d at 936-37. *See Espinoza*, 280 F.R.D. at 127-28 ("With regard to commonality, the Named Plaintiffs' claims and those of the members of the putative class arise from a common wrong: Defendants' failure to pay proper minimum wage and overtime… The typicality requirement is also satisfied… [T]he minimum wage and overtime claims alleged by Plaintiffs are similar to those of the class members and arise from the same allegedly unlawful practices and policies."); *see also* Pippins v. KPMG LLP, No. 11 Civ. 0377(CM)(JLC), 2012 WL 19379

16

(S.D.N.Y. Jan. 3, 2012) (holding that the FLSA claims before the court did not require the analysis of millions of individual employment decisions but rather that "the crux of this [FLSA] case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights."). Plaintiff's claims might present individualized questions regarding the number of hours worked and how much each employee is entitled to be paid but these differences go simply to the question of damages not the commonality and typicality of their claims. "Numerous courts have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'—despite differences in hours worked, wages paid, and wages due." *Espinoza*, 280 F.R.D. at 128, *quoting Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011), *quoting Ansoumana*, 201 F.R.D. at 86 ("'[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled,' but do not defeat typicality for Rule 23 purposes.").

Here, there can be no doubt that the employer had company-wide wage policies to deduct 8 hours of sleep and 3 hours of meal breaks from aides' 24-hour live in shifts. Thus, the typicality requirement is met. *Id.*

### E.     Representative and Counsel Are Adequate

Rule 23(a)(4) provides that, in order to certify a class, its proponents must show that "the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23(a)(4). The Second Circuit Court of Appeals has held that the threshold for meeting "adequacy of representation" is "[first,] class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)

17

(internal citations omitted); *Jankowski v. Castaldi,* No. 01CV0164(SJF)(KAM), 2006 WL 118973 at *3-4 (E.D.N.Y. Jan. 13, 2007). Plaintiffs' counsel William C. Rand has significant experience handling class actions. See Rand Declaration and biography attached thereto..

The class members do not have interests that are antagonistic to one another. The Plaintiff raises state claims that are applicable to all members of the class. The interests of the named Plaintiff -- to collect unpaid overtime wages -- do not differ from those of the class. The representative Plaintiff has adequate personal knowledge of the essential facts of the case. *See Iglesias-Mendoza,* 239 F.R.D. at 372. Such knowledge is demonstrated by the named Plaintiff's declaration attached herein.

### F.   The Requirements of Rule 23(b)(3) Are Met.

Under Rule 23(b)(3), a class may be certified only where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, common questions of law and fact predominate and a class action is a superior method of adjudication.

### 1.   Questions of Law and fact Predominate

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *See Moore v. PaineWebber, Inc.* 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance will be established if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Id.* Consequently, to determine whether common questions of law or fact predominate, a court must focus "on the legal or factual questions that qualify each class

18

member's case as a genuine controversy ... [and] test[ ] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also, In re Visa Check/MasterMoney*, 280 F.3d 124, 135 (2d Cir. 2001); *In re WorldCom, Inc. Securities Litig.,* 219 F.R.D. 267, 287-88 (S.D.N.Y. 2003).

The predominant legal and factual issues in this case are issues that apply across the class. The predominant legal issues for the class involve whether Defendant's pay practices violated New York State Labor Law requiring overtime pay. The main legal issue is whether Defendant violated the law by not paying class members any overtime pay (at time and one half their regular rate or the N.Y. minimum wage rate) when they worked over 40 hours in a week.

All of these issues are subject to generalized proof. Once those class-wide issues are resolved, the remaining factual questions are minor. As the court found in *Iglesias-Mendoza*:

> The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are perfect questions for class treatment. Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement.

239 F.R.D. at 373 (emphasis added).

Where common questions of law and fact predominate with respect to liability, as they do here, the existence of individual questions as to damages is generally unimportant. *See, In re Visa,* 280 F.3d at 136 (if common issues predominate as to liability, court should ordinarily find predominance even if some "individualized damage issues" exist); *Shabazz v. Morgan Funding Corp.,* 269 F.R.D. 245, 250-51 (S.D.N.Y. 2010) ("Any class action based on unpaid wages will necessarily involve calculations for determining individual class member damages, and the need for such calculations do not preclude class certification."). Any testimony required to prove the extent of the damages can also be done with representative testimony. *Reich v. S. New England*

19

*Telecommunications Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) ("it is well-established that the [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA"); *Ibea v. Rite Aid Corp.*, 11 CIV. 5260 JSR HBP, 2012 WL 1193778, *1 (S.D.N.Y. Apr. 3, 2012) ("in cases where records do not exist, or where they are 'false and inaccurate,' a plaintiff may rely on 'fairly representative testimony' to prove damages.") (citations omitted). Thus, individualized damage issues would be minimized. Alternatively, if necessary the Court can bifurcate this case into liability and damages phases and certify a class as to liability issues only. *See In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("a court may employ [Rule 23(c)(4)(A)] to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement"); *Velez v. Majik Cleaning Serv., Inc.,* 03 CIV. 8698 (SAS), 2005 WL 106895, *4 (S.D.N.Y. Jan. 19, 2005); *quoting* 5 James Wm. Moore et al., Moore's Federal Practice § § 23.46[2][a] (3d ed. 2003)) (certifying class for liability issues only; "[I]f common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied even if individual damages issues remain. Courts often bifurcate trials into liability and damages phases in order to sever common liability questions from individual damages issues.").

### 2.  A Class Action Is a Superior Method of Adjudication

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action." *Noble*, 224 F.R.D. at 339.

The overwhelming precedent in the Second Circuit has made it clear that adjudicating

FLSA collective actions and Rule 23 state law claims together is superior to other available methods. *See* <u>Damassia v. Duane Reade, Inc.</u>, 250 F.R.D. 152, 164 (S.D.N.Y. 2008) (holding that defendant's argument "that class certification should be denied because it is preferable that potential class members proceed through an FLSA collective action is unpersuasive, particularly in light of the overwhelming precedent in the Second Circuit supporting certification of simultaneous N.Y.L.L class actions and FLSA collective actions. Hence, the superiority requirement of Rule 23 is satisfied."); *see also Lee,* 236 F.R.D. at 205. Indeed, the state Rule 23 claim for parallel state overtime claims complements the FLSA's goal to protect "all" covered workers. *Barrentine v. Arkansas Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) ("The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours…".)

In light of the overwhelming precedent in the Second Circuit supporting certification of simultaneous New York Labor Law class actions and FLSA collective actions, Plaintiffs' claims for overtime compensation should be handled on a class wide basis. The management of a class action in this matter is not complex and all the legal and factual issues can be resolved in a single proceeding. Resolving the predominant issues in a single action is more efficient than re- litigating them in many different individual actions. Adjudication of the common issues of law and fact is in the interest of all class members and they are well represented by lead Plaintiff and counsel. It avoids competing decisions on the predominant issues and offers finality. There is no device other than a class action that can resolve these matters as efficiently as a class action.

**CONCLUSION**

The Plaintiff has shown by her declaration and by the declaration of Jane Tapper and the declaration of William Rand and the paystubs and duty sheets and attendance records attached thereto that she is similarly situated with other former and current employees of Defendants. Accordingly, a class and collective action should be certified, and Defendants should be required to post notice of the similar employees' right to join this action in a conspicuous location, and Defendants should provide the names and addresses and email addresses and telephone numbers of the similar employees employed within six years preceding the date of the Complaint, so that notice of this action may be communicated to them. For the foregoing reasons, Plaintiff respectfully requests that Plaintiff's motion be granted.

Dated: New York, New York
            September 15, 2024

LAW OFFICE OF WILLIAM COUDERT RAND

S/William C. Rand

_____
William Coudert Rand, Esq. (WR-7685)
*Attorney for Plaintiff*, Individually,
and on Behalf of All Other Persons Similarly Situated
501 Fifth Avenue, 15th Floor
New York, New York 10017
Tel: (212) 286-1425